See dissenting opinion of PROVOSTY, J., 84 South. 209.

═══════

(84 South. 210)

No. 23714.

HORSTHEMKE v. NEW ORLEANS RY. & LIGHT CO.

(April 5, 1920.)

*(Syllabus by Editorial Staff.)*

1. CARRIERS ☞381(4) — EVIDENCE HELD TO SHOW UNJUSTIFIED EJECTION OF PLAINTIFF FROM MOVING STREET CAR.

In an action for personal injury, evidence *held* to show that plaintiff was ejected from a moving street car ruthlessly and without justification.

2. CARRIERS ☞366 — CONDUCTOR EXPELLING INTOXICATED PASSENGER MUST USE DUE CARE.

Where a conductor of street car is justified in expelling an intoxicated passenger, he must have due regard for his safety, particularly if his condition of intoxication interferes with his taking care of himself.

3. CARRIERS ☞382(7)—$3,000 FOR INJURY TO HEAD TEMPORARILY IMPAIRING SIGHT AND EARNING CAPACITY NOT EXCESSIVE.

Where plaintiff while a passenger was ejected from a moving street car ruthlessly and without justification and sustained an injury to his head temporarily impairing his mental faculties, sight, and earning capacity, though he had recovered from the injury at time of the trial, a verdict of $3,000 was not excessive.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Action by John Horsthemke against the New Orleans Railway & Light Company. Verdict and judgment for plaintiff, and defendant appeals; and plaintiff, answering the appeal, asks that the amount of judgment be increased. Affirmed.

Dart, Kernan & Dart, of New Orleans, for appellant.

F. B. Davenport, of New Orleans, for appellee.

O'NIELL, J. Defendant appeals from a judgment, based upon the verdict of a jury, allowing plaintiff $3,000 damages for personal injuries. Answering the appeal, plaintiff asks that the amount of the judgment be increased to $6,000.

He charges that a street car conductor in the employ of the defendant company shoved and kicked him from the platform or step of a moving car, on which he was traveling, or attempting to travel, as a passenger.

Defendant's answer is that plaintiff was intoxicated when he boarded the car, and made a nuisance of himself; that, when he had traveled a distance of two blocks, the

conductor stopped the car and had the man alight, and led him to the sidewalk and left him there in a place of safety; and that, after the car had started, the man ran and attempted to catch the rear end of the car, and in doing so, stumbled and fell. Defendant therefore avers that the injury suffered by plaintiff was the result of his own fault, and that the conductor was not guilty of any negligence or wrongdoing.

The case presents only questions of fact. Plaintiff boarded the car, going uptown, on Baronne street, somewhere between Canal and Gravier, at 11:40 a. m. He denies that he was at all intoxicated, but there is a preponderance of evidence that he was somewhat under the influence of liquor. The conductor and a passenger who was standing on the rear platform of the car testified that plaintiff was staggering, obviously drunk, and attempted to sit in the doorway of the car. There is no proof that the car was crowded. In fact, it does not appear that there were more than the two passengers on the car. The conductor testified that, when plaintiff tendered his fare, he, the conductor, declined to receive it, telling the man he had better get off of the car; that the man replied, "All right," and was not at all offensive or impolite; that he, the conductor, then stopped the car at Gravier street, assisted the man off, led him to the sidewalk and placed him against the front of the Perrin Building; and that, when the car had started again, the man ran after it and stumbled and fell upon his hands and knees. The testimony of the conductor was corroborated, in the main part, by that of the motorman and of the other passenger. The latter, however, testified that he was engaged in giving his name and address to the conductor, when the latter returned after putting the man off of the car, and did not see the man fall. The conductor and motorman also testified that, when the man stumbled and fell upon

his hands and knees, about ten feet behind the car, he immediately arose and walked toward the sidewalk; and that they believed he was not injured and therefore did not stop to inquire about him.

Plaintiff's testimony, except as to the conductor's kicking him, is corroborated by that of three disinterested witnesses, who saw the man fall from the step of the moving car. Two of the witnesses saw the conductor grab the man's hands and release them from the handrails while he was struggling to retain his position on the step of the car; and one of the witnesses testified that the conductor shoved the man from the car step.

The testimony of plaintiff's witnesses is also corroborated—and that of the conductor and motorman is seriously impeached—by that of a physician who was on the scene immediately after the man had fallen, while he was yet lying in or near the gutter. The physician testified that a crowd had gathered around the injured man, and that those who had witnessed the offense of the conductor were expressing their indignation, saying "how bad it was, and what an awful shame it was." The injured man had a deep cut over his right eye, as the doctor testified, "cut almost down to the skull," and had a brush wound or skinned place on his left knee. Several of the bystanders carried the man into the doctor's office, where his injuries were treated and the cut over his eye was sewed up.

One disinterested witness, who saw the man fall from the moving car, was so incensed by the conduct of the conductor that he went to the office of the railway company and reported the occurrence.

[1, 2] The evidence convinced the jury, and it convinces us, that the plaintiff was ejected from the moving car, ruthlessly and without justification. Considering that he did not commit any disturbance as a passenger on the car, we doubt that his condition of in-

toxication made him a nuisance, or justified the conductor's putting him off of the car, instead of directing him to a seat in the car. Conceding, however, that the conductor was justified in expelling an intoxicated passenger, the conductor's duty was to have due regard for the safety of the passenger, particularly if his condition of intoxication interfered with his taking care of himself.

[3] We see no reason for changing the amount of the verdict. The testimony of several physicians shows that plaintiff's mental faculties and sight, and his earning capacity, were temporarily impaired, as a result of the injury to his head; but he had recovered from the injury at the time of the trial. Our judgment of the extent of the injury is no better than was that of the trial judge or jury.

The judgment is affirmed.